UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | | |
|---|---|---|
| **SELENA PEELER** | ) | |
| | ) | |
| **PLAINTIFF** | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 3:19-CV-329-RGJ |
| | ) | |
| **METALSA STRUCTURAL PRODUCTS, INC** | ) | |
| | ) | |
| | ) | |
| **DEFENDANT** | ) | |

## COMPLAINT

### I. PARTIES

1. The Plaintiff, Selena Peeler ("Peeler") is an Elizabethtown, Hardin County, Kentucky resident.

2. The Defendant, Metalsa Structural Prodcuts, Inc. ("Metalsa"), is a Foreign Corporation operating and conducting business in Elizabethtown, Hardin County, Kentucky.

### II. JURISDICTION AND VENUE

3. This is an action for violations of the Family Medical Leave Act ("FMLA") pursuant to 29 USC §2601 et. seq., the Americans with Disabilities Act ("ADA") pursuant to 42 USC §12101 et. seq. and the Kentucky Workers Compensation Act, KRS 341.197.

4. This Court has original jurisdiction pursuant to the provisions of 29 USC §2601 et. seq. and 42 USC §12101 et. seq.

5. Venue is proper in this district because the actions giving rise to this Complaint occurred in this judicial district. Further, Defendant Metalsa operates and conducts business within this judicial district.

1

### III. **FACTUAL BACKGROUND**

6. Peeler is a former employee of Metalsa.

7. Peeler was employed by Metalsa in the position of "product technician."

8. Peeler began her employment with Metalsa in February of 2015 and was employed with Metalsa for four (4) years.

9. Metalsa is an "employer" within the meaning of the FMLA, ADA, and KRS 342.197 at all times relevant to this Complaint.

10. Peeler was an "eligible employee" within the meaning of the FMLA, at all times relevant to this Complaint.

11. During the course of Peeler's employment, in approximately July 2017, Peeler's infant son was born was diagnosed with chronic asthma requiring frequent doctor's appointments and medical treatment, for which Peeler applied for leave pursuant to the Family Medical Leave Act (FMLA) in mid to late 2017, which was approved.

12. Immediately after Peeler began taking intermittent leave for her infant son's serious health condition, Peeler's direct supervisor, Stuart Williams ("Williams") began harassing Peeler about her use of FMLA leave, making negative comments that Peeler shouldn't "abuse FMLA" and treating Peeler less favorably than other employees who were not on FMLA. Many employees who regularly missed work, including Chelsea Dean, Blake Humphrey, and Seth Oberdorf, were routinely excused and not assessed attendance "points" or otherwise disciplined by Williams, while Peeler was issued points for every absence even when they were FMLA qualifying or related to her later-occurring workplace injury

13. Because Williams continued to harass and retaliate against her for FMLA use, Peeler made a complaint against him to Metalsa's Human Development (HD) department in

approximately August 2017, and although not required, Peeler submitted documentation to the HD department verifying that her absences were directly related to her son's illness and resulting medical treatment, in an effort to stop any further harassment or retaliation by Williams

14. Williams' harassment of Peeler not only continued, it became significantly worse after Peeler reported a workplace injury to her right hip in August 2018 and following several other female employees' application and approval of FMLA leave. Williams continued to make discriminatory comments regarding these female employees' use of FMLA leave and assessing attendance points to them while allowing others who missed to be excused. Upon information and belief, two of these females were also terminated by Metalsa.

15. Although Peeler first reported and submitted an incident report regarding her workplace injury in July or August of 2018, Metalsa failed to report it as a workplace injury and head of safety at Metalsa, Martha Delgato ("Delgato"), actually advised Peeler that it was "just arthritis" and that she did not have a workplace injury. Peeler sought medical treatment at that time from her primary care physician and later at the Emergency Department at Jewish South hospital when her pain became increasingly more severe.

16. Although Delgato advised that they would allow Peeler to sit down between cycles (which Metalsa already apparently allowed all employees in Peeler's department to do regardless of whether they were injured or not), Williams removed Peeler's chair from her work area while allowing other workers to keep their chairs and to continue sitting between cycles. Williams stated, "Let's see if she wins this battle" which was overheard by several Metalsa employees. Peeler made complaints to Metalsa's safety department regarding this incident.

17. After a follow up with her primary care physician on or around November 28, 2018, Peeler was released to return without restrictions on December 3, 2018; however because she was

still in significant pain after receiving a steroid shot, Peeler was not able to return and advised Metalsa that she needed additional medical treatment for her injury. Peeler was issued an attendance point for this date (which was ultimately used later as a means to terminate her) despite Metalsa being aware that this absence was directly related to her workers' compensation claim and Peeler being advised that she would not be assessed a point for this day.

18.     Finally, on or around December 4, 2018, after making several complaints regarding her worsening injury and on multiple occasions requesting medical treatment from Metalsa's workers' compensation physicians, Peeler was advised to report to WorkWell for her condition as it was possibly work-related after all. Peeler was diagnosed with bursitis which was determined to be a work-related injury and a claim was opened with Traveler's, Metalsa's workers' comp insurance carrier.

19.     Peeler was released to return to work on December 5, 2018 with light-duty restrictions of sit-down duty only and walk only as tolerated. Immediately upon her return and submitting her work restrictions to a Metalsa nurse, Jackie Cottrell ("Cottrell"), and Williams, Williams became agitated and responded that he did not have any work available for Peeler and stormed off.

20.     Cottrell asked if Peeler could do some of her regular work, but Peeler advised that even some of the work which allowed for periodic sitting required her to lift and carry very heavy equipment, which was outside of her work restrictions. Cottrell immediately became angry and told Peeler she would have to report to the safety office. Upon arriving in the safety office, Cottrell stated to the two individuals in the office, "I'm going to let you guys deal with her. I'm sick of this." Peeler asked to speak with her Union President at this time and they both went to the HD office to make a complaint about William's and Cottrell's behavior.

4

21. Because of the severity of Peeler's injury and the extensive pain she was experiencing, she was taken off work until approximately January 3, 2019 at which point she was released with light-duty restrictions again. Metalsa continued to issue work to Peeler that violated her work restrictions of which Peeler made complaints to her orthopedic physician and to her workers' compensation adjuster Julio Garcia, and medical case manager, Shannon Rolfson, both at Traveler's.

22. On January 21, 2019, Peeler reapplied for FMLA leave to care for her son and for her own serious health conditions, which was denied because she had allegedly only worked 1,234.92 hours of the required 1,250. Peeler waited until February 22, 2019 to submit another application for FMLA for her and her son's serious health conditions, which was also denied, this time alleging that she had only worked 1,179.85 hours; over 55 hours less than what Metalsa had calculated one month prior. Apparently Metalsa failed to keep accurate records regarding Peeler's FMLA entitlement and continued to assess absences related to her worker's compensation claim against her.

23. Metalsa also failed to allow Peeler to utilize other leave options that she had available to her (vacation and personal time) to cover absences related to her son's asthma and for her work-related injury, as she had been previously allowed to do and as others were being allowed to do who were not injured or on FMLA. Peeler was subsequently terminated for attendance after requesting to use a personal day to cover her for an absence related to her infant son's asthma, which was later denied without explanation.

24. Following her termination, Metalsa has failed to pay Peeler for her earned but unused vacation time.

25. At the time of her termination from Metalsa, Peeler still had significant personal days and vacation time available to her.

26. Peeler's bursitis diagnoses constitutes a disability under the American with Disabilities Act ("ADA") pursuant to 42 USC §12102 et. seq. and a "serious health condition" under the Family Medical Leave Act ("FMLA"), 29 United States Code § 2601 *et. seq.*

27. Metalsa failed to provide information to Peeler regarding Peeler's rights and responsibilities pursuant to the FMLA which would have covered her for any days missed related to her or her son's serious health conditions, thus being in violation of the FMLA's mandatory notice requirements. Metalsa also failed to accurately track Peeler's FMLA eligibility and dates used for FMLA.

28. Metalsa failed to accommodate Peeler's disabilities and discharged Peeler.

29. Metalsa was aware of Peeler's disabilities prior to discharging her.

30. Metalsa perceived and regarded Peeler as having disabilities prior to discharging her.

31. Following her termination, Peeler filed an EEOC claim against Metalsa, case number 474-2019-00563 for disability discrimination and retaliation on or around March 7, 2019.

### III. CLAIMS AND CAUSES OF ACTION

### COUNT I. VIOLATIONS OF THE FAMILY MEDICAL LEAVE ACT (INTERFERENCE)

32. Peeler re-alleges all allegations contained in paragraphs 1 through 31 above as if fully set forth herein.

33. Peeler was an eligible employee under the FMLA and at the time of her leave, Peeler had been employed by Metalsa for at least twelve (12) months.

34. Peeler properly notified Metalsa of her need for leave for hers and her son's serious health conditions.

35. Peeler was entitled to receive leave pursuant to the FMLA.

36. Metalsa failed to provide proper and accurate notice to Peeler regarding her FMLA entitlement and designating the dates upon which her FMLA had been approved or denied.

37. Metalsa's actions, as set forth above, constitute interference in violation of the FMLA.

38. As a result of Metalsa's violation of the FMLA, Peeler has been damaged in an amount in excess of the minimum jurisdictional limits of this Court.

### COUNT II. VIOLATIONS OF THE FAMILY MEDICAL LEAVE ACT (RETALIATION)

39. Peeler re-alleges all allegations contained in paragraphs 1 through 38 above as if fully set forth herein.

40. Peeler was an eligible employee under the FMLA.

41. Metalsa retaliated against Peeler by assessing attendance points against Peeler and for terminating Peeler for taking FMLA-qualifying absences.

42. Metalsa's actions, as set forth above, constitute retaliation in violation of the FMLA.

43. As a result of Metalsa's violation of the FMLA, Peeler has been damaged in an amount in excess of the minimum jurisdictional limits of this Court.

### COUNT III. VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT/ DISCRIMINATION ON THE BASIS OF AN EMPLOYEE'S DISABILITY

44. Peeler re-alleges all allegations contained in paragraphs 1 through 43 above as if fully set forth herein.

7

45. Metalsa terminated Peeler's employment on the basis of a disability and/or a "perceived" disability and/or a "regarded as" disability in violation of 42 USC §12101 et. seq.

46. As a result of Metalsa's violations of the ADA, Peeler has been damaged in an amount in excess of the minimum jurisdictional limits of this court.

### COUNT IV. VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT/EMPLOYER'S FAILURE TO PROVIDE A REASONABLE ACCOMMODATION

47. Peeler re-alleges all allegations contained in paragraphs 1 through 46 above as if fully set forth herein.

48. Peeler was a qualified individual with a disability under the ADA, 42 USC §12101 et. seq.

49. Metalsa failed to reasonably accommodate Peeler's disability in violation of 42 USC §12101 et. seq.

50. As a result of Metalsa's violations of the ADA, Peeler has been damaged in an amount in excess of the minimum jurisdictional limits of this court.

### COUNT V. VIOLATIONS OF KRS 342.197

51. Peeler re-alleges all allegations contained in paragraphs 1 through 50 above as if fully set forth herein.

52. Metalsa discharged Peeler in violation of the anti-retaliation provisions of Kentucky Revised Statutes, Chapter 342 *et. seq.*, and KRS 342.197.

53. As a result of Metalsa's violation of KRS 342.197, Peeler has been damaged in an amount in excess of the minimum jurisdictional limits of this Court.

### COUNT VI.   MANDATORY RECOVERY OF ATTORNEY'S FEES AND COSTS

54. Peeler re-alleges all allegations contained in paragraphs 1 through 53 above as if fully set forth herein.

55. Peeler is mandatorily entitled to recover her attorney's fees and costs pursuant to the provisions of the FMLA, ADA and KRS 342.197.

### IV.   PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff, Selena Peeler, respectfully prays that she be awarded the following relief and all other relief to which she may be entitled against the Defendant, Metalsa Structural Products, Inc.:

A. Trial by jury;

B. Judgment against Defendant on all claims asserted herein;

C. Compensatory and actual damages including but not limited to past and future lost wages and past and future lost benefits;

D. Compensatory damages including but not limited to emotional distress, mental anguish, humiliation and embarrassment;

E. All statutory remedies provided by the FMLA and the ADA;

F. Liquidated damages pursuant to the FMLA for Defendant's willful violations of the FMLA;

G. Equitable relief in the form of reinstatement, promotion and/or front pay;

H. Punitive damages to punish and deter similar future unlawful conduct;

I. An award of statutory attorney fees, expert witness fees, costs and expenses;

J. Statutory interest on all monetary damage awards, verdicts, or judgments; and

K.      All other and additional relief to which Peeler may be entitled.

Respectfully submitted,

THE ZOPPOTH LAW FIRM

/s/ Amanda R. Walker
Amanda R. Walker
Bradley S. Zoppoth
635 W. Main Street, Suite 400
Louisville, KY  40202
(502) 568-8884
arw@zoplaw.com
bsz@zoplaw.com
*Counsel for the Plaintiff, Selena Peeler*